**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-20723

JERRY BAKER; SALMA WASHINGTON BAKER,

Plaintiffs,

JERRY BAKER,

Plaintiff-Appellant,

VERSUS

MERCEDES BENZ OF NORTH AMERICA; DAIMLER BENZ AG,

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas
(H-93-CV-1761)

November 18, 1998

Before DeMOSS, PARKER and DENNIS, Circuit Judges.

PER CURIAM:*

     Jerry Baker brought this products liability action against Mercedes Benz of North America

and Daimler Benz AG for damages, alleging that a defective automobile manufactured and distributed

by the defendants caused him severe injuries. The defendants successfully moved for the exclusion

_____

*Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published
and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

of Baker's expert witness's testimony and for summary judgment dismissing Baker's suit. Upon Baker's first appeal, the district court's judgment was vacated and the case was remanded without expression as to the merits for the entry of a separate document judgment. Baker v. Mercedes Benz of North America, 114 F.3d 57 (5th Cir. 1997). This second appeal by Baker puts at issue the merits of the evidentiary ruling and the summary judgment. We affirm. The district court did not abuse its discretion in excluding the testimony of Baker's expert on the grounds that Baker failed to demonstrate that the expert's opinion would have a reliable basis in the knowledge, experience and methodology of his field of expertise. The summary judgment was properly granted because Baker failed to establish a factual basis from which a reasonable trier of fact could find that his injuries probably were caused by a defect or unreasonably dangerous condition in the defendants' motor vehicle product that existed when it left their hands.

Baker sustained severe injuries in a single car accident that occurred when the 1985 Mercedes Benz 380 SE he was driving accelerated rapidly on its own, causing the vehicle to run off the road and into a utility pole. Baker testified in his deposition that he had done nothing to make the car accelerate, that he could not stop the car by applying its brakes, and that he did not know what had caused the car's abrupt, rapid acceleration. Baker had borrowed the car from a friend to go to a store by himself to buy cigarettes. The wrecked vehicle apparently was transferred to a junk dealer who disposed of its front end containing its engine, accelerator and cruise control unit. Because the front end of the Mercedes 380 SE was not available, neither Baker nor the Mercedes defendants had an opportunity to inspect that part of the automobile for defects.

Nevertheless, Baker proffered the testimony of an expert engineer who expressed his opinion that the sudden acceleration of the automobile had been caused by an electromagnetic interference (EMI) disturbance which affected the car's fuel injection or cruise control system. The expert had a B.S. in mechanical engineering from Purdue University and was a registered professional engineer in several states. He had not received any formal advanced training in the fields of electrical or mechanical engineering. The expert testified that he had studied approximately twenty five sudden

2

acceleration cases, about half of which he concluded were caused by EMI with cruise controls. He evidently had not been allowed to testify regarding his studies by any court.

The expert had not been able to test his explanatory theory of EMI-related rapid automobile acceleration due to the lack of substantial funding that such tests would require. He cited tests by the National Highway Traffic and Safety Administration and the Canadian government. He admitted, however, that neither of these studies had duplicated the "fully opened throttle" relationship with EMI that is essential to his own explanatory theory.

The expert had not inspected the pertinent parts of the car involved in the accident or tested any similar vehicle for EMI-related acceleration. He had not attempted to detect EMI at the site of the accident or internally initiated EMI in a car similar to the one involved in Baker's accident. The expert's opinion and proposed testimony were based on Baker's testimony, the expert's knowledge of fuel injection and cruise control systems, and eight articles dating between 1964 and 1988 that described EMI tests with receivers that did not include either fuel injection or cruise control devices.

Under these circumstances, the expert's opinion that Baker's accident had been caused by an electromagnetic interference with the fuel injection and cruise control systems of the automobile did not "have a reliable basis in the knowledge and experience of his discipline." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). Accordingly, the district court did not abuse its discretion in excluding the expert's opinion. See General Electric Co. v. Joiner, 118 S. Ct. 512, 517 (1997).

We further conclude that the district court did not err in granting summary judgment in favor of the Mercedes defendants. As the district court observed:

> Baker himself has only provided testimony that the car "suddenly took off . . . It did not slow or stop until I crashed into a pole." Baker's only remaining expert, while suggesting that the brake lights were illuminated when the accident occurred, also noted that "insufficient physical evidence exists to confirm that an unintentional acceleration occurred . . ." In other words, [the expert] cannot even confirm that the car suffered "sudden acceleration," much less that such a phenomenon was caused by a defect.
>   Baker attempts to introduce deposition testimony of one of Mercedes' experts to show that there was a defect in the car Baker was driving. According to the testimony of Gary Browne [in a different case], there have been cases in which the throttle linkage in cars similar to the one driven by Baker were stuck. According to this testimony, a car moving

3

between 40 to 50 miles per hour could suffer from a stuck throttle, and the operator would have difficulty slowing down the car. In other words, although the problem may seem similar to the one of which Baker complains, it does not involve sudden acceleration.

Doc. 53, p. 8-9 (citations and footnotes omitted).

Consequently, a reasonable inference cannot be drawn from the summary judgment evidence of record that Baker's accident more likely than not was caused by an EMI-related abrupt, rapid self-acceleration of the Mercedes 310 SE which resulted from a defect or unreasonably dangerous condition in the automobile that existed at the time it left the Mercedes defendants' hands.

For the reasons assigned, the judgment of the district court is AFFIRMED.